UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
WILLIAM RIOS,

                                Plaintiff,                         **MEMORANDUM & ORDER**

              -against-                                           **12-CV-5102 (NGG)**

COMMISSIONER OF SOCIAL SECURITY

                                Defendant.
----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff William Rios brings this action pro se pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's (the "SSA") determination that he was not disabled during the period from June 1, 2010, the alleged onset date of his disability, through May 17, 2011, the date of the Administrative Law Judge's ("ALJ") decision. (See Compl. (Dkt. 1).) Defendant Carolyn W. Colvin, the Commissioner of Social Security, has filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def.'s Not. of Mot. (Dkt. 15).) For the reasons set forth below, the Commissioner's motion is GRANTED.

I.     **BACKGROUND**

      Plaintiff was born on June 15, 1966. (See Administrative Rec. ("Rec.") (Dkt. 8) at 26.) He completed tenth grade. (Id. at 26-27.) From 1986 until June 1, 2010, Plaintiff was employed as a shipping clerk. (Id. at 113.) Plaintiff also worked in hotel maintenance between July and September of 2001. (Id.) On June 1, 2010, Plaintiff stopped working as a shipping clerk because he had been receiving medical treatment intermittently. (Id. at 27.)

A.   **Plaintiff's Medical History**

Plaintiff has a history of asthma, for which he takes medication, and which, at times, has required emergency room visits and hospitalization. (See id. at 15, 133, 139, 171.) Plaintiff also has a history of hypertension, although he does not take any medication for it. (Id. at 171, 174.) Plaintiff experiences leg problems, including numbness of the legs and difficulty squatting. (Id. at 32-34, 172.) At some point in the past, Plaintiff had arthroscopic surgery on his right knee. (Id. at 172.)

Plaintiff does not see a treating doctor for his medical conditions. (See id. at 117.) Accordingly, the medical records relied upon by the SSA include only those from Plaintiff's hospital visits, as well as the results of Plaintiff's visit to a consultative examiner.

Plaintiff has a long history of hospital visits. Plaintiff visited Woodhull Medical and Mental Health Center ("Woodhull") in October 2004, where he was treated for asthma. (Id. at 160.) On January 31, 2008, Plaintiff again visited Woodhull, this time for acute exacerbation of asthma. (Id. at 139-42.) Plaintiff returned to Woodhull the next day, where he was diagnosed with an upper respiratory infection. (Id. at 149-50.) On February 4, 2008, Plaintiff was seen for follow-up at Woodhull's ambulatory care clinic. (Id. at 156-57.)

On June 5, 2008, Plaintiff visited Woodhull, complaining of acute chest pain. (Id. at 143-44.) An electrocardiogram ("EKG") showed normal sinus rhythm, and chest x-rays showed no infiltrates. (Id. at 144.) On August 16, 2008, Plaintiff again visited Woodhull, complaining of left hand pain after punching a wall. (Id. at 147-48.) On February 23, 2009, Plaintiff visited Woodhull for chest and shoulder pain. (Id. at 135-38.) An EKG was normal. (Id. at 137-38.) Plaintiff was diagnosed with left chest wall tenderness and left shoulder pain.

(Id. at 136.) On June 16, 2009, Plaintiff again visited Woodhull, this time complaining of dizziness following a dental extraction procedure. (Id. at 145-46.)

On January 20, 2010, Plaintiff was admitted to Wycoff Heights Medical Center for evaluation of chest, leg, and back pain. (Id. at 163-70.) The medical records note that two weeks prior to the admission, Plaintiff suffered from a viral upper respiratory infection. (Id. at 164.) Plaintiff remained in the hospital for five days, and was treated with Tylenol, Aspirin, Atrovert, and Proventil. (Id.) Upon discharge, Plaintiff was diagnosed with post-viral myalgia and bronchial asthma. (Id.) On March 29, 2010, Plaintiff visited Woodhull for further testing. The results of an EKG were normal. (Id. at 161.) A CT-scan of Plaintiff's brain was unremarkable. (Id. at 154.) On May 30, 2010, Plaintiff was seen at Woodhull for an asthma attack. (Id. at 132-33; see also id. at 27, 171.)

### B. Results of Consultative Medical Exam

Dr. Rahel Eyassu conducted a consultative internal medicine examination on June 28, 2010. (Id. at 171-74.) Dr. Eyassu described Plaintiff's history of asthma and noted that Plaintiff currently took Azithromycin, Prednisone, Proventil, and Advair to treat his condition. (Id. at 171.) Plaintiff stated during the examination that he cooks, launders, shops, cleans, and showers himself. (Id. at 172.) Plaintiff's gait was normal, and he could walk on his heels and toes without any difficulty. (Id.) He could perform 50% of a full squat. (Id.) Plaintiff's stance was normal, and he did not need any assistive devices. (Id.) With respect to Plaintiff's chest and lungs, Dr. Eyassu noted that Plaintiff had decreased breath "due to poor effort" on the pulmonary functioning test, and also noted no significant chest wall abnormality, and normal diaphragmatic motion. (Id. at 173.)

Dr. Eyassu opined a "fair" prognosis with respect to Plaintiff's asthma, and advised Plaintiff to follow-up with his planned medical appointments. (Id. at 174.) Dr. Eyassu concluded that Plaintiff should "avoid dust, fumes and other respiratory irritants that can trigger his asthma." (Id.) He also noted that Plaintiff "has some limitation in squatting. Otherwise, he is unrestricted for walking, standing, reaching up, sitting, pulling, pushing and handling." (Id.)

### C. Plaintiff's Testimony During the Hearing

Plaintiff testified under oath during a hearing before the ALJ. (See id. at 25-40.) He stated that he has asthmatic attacks every two weeks, but that he takes his medication, from which there are no side effects. (Id. at 29.) Plaintiff testified that he sleeps in a chair because he has trouble breathing lying down. (Id. at 30.) During a typical eight-hour day, Plaintiff spends about four to five hours sitting down, and about four hours standing or moving around. (Id. at 31.) Plaintiff stated that he can only walk two to three blocks before returning home. (Id.) He can lift twenty pounds and can carry thirty pounds. (Id. at 32.) With respect to his legs, sometimes both become numb during an asthma attack. (Id.) Plaintiff stated that he cannot squat, crawl, climb a ladder, maintain his balance while walking, stoop, kneel, or crouch. (Id. at 33-35.) He stated that the following conditions would prevent him from working: dust, odors, fumes, and gas; the need to operate a motor vehicle; extreme cold and heat; vibrations; loud noise; temperature and humidity changes; and exposure to heights or moving machinery. (Id. at 35-36.)

Plaintiff confirmed that he can independently bathe, run errands, prepare a simple meal, walk (although sometimes he uses a cane), use public transportation, do housework, drive, exercise, socialize with family and friends, attend religious services, and keep medical appointments. (Id. at 36-38.) At the end of the hearing, Plaintiff stated that he would submit

additional forms following upcoming appointments with a neurologist (for dizziness) and the asthma clinic (id. at 39); but, according to the ALJ, Plaintiff provided no additional evidence following the hearing (id. at 15).

## II.    PROCEDURAL HISTORY

On June 3, 2010, Plaintiff filed a pro se application for disability insurance benefits and Supplemental Security Income, due to asthma, "thickness of blood," and numbness on his left side. (See id. at 112.) The SSA denied the application on July 12, 2010. (Id. at 43.) Plaintiff, still proceeding without counsel, requested a hearing before an ALJ, and the judge held a hearing on March 15, 2011. (Id. at 20-40.) On May 17, 2011, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act, and denying Plaintiff's application for Social Security Disability Benefits. (Id. at 8-19.) Plaintiff requested that the SSA Appeals Council review the ALJ's unfavorable decision, and the Appeals Council denied the request for review on September 13, 2012, upholding the ALJ's decision. (Id. at 1-3.)

On October 9, 2012, Plaintiff filed the instant action seeking judicial review of the SSA's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (See Compl. ¶ 1.) The Commissioner filed her Answer, with a copy of the administrative record, on May 24, 2013. (See Answer (Dkt. 9).) The Commissioner subsequently filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Not. of Mot.; Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings (Dkt. 16).) Plaintiff failed to serve an opposition to the Commissioner's motion. (See Gov't's Ltr. Mot. for Leave to File Mot. Unopposed (Dkt. 13); Oct. 16, 2013, Order (Dkt. 14) at 2 (granting Plaintiff additional time to serve opposition brief

and authorizing the Commissioner to file the motion unopposed if Plaintiff did not serve an opposition by November 15, 2013).)

## III. LEGAL STANDARDS

### A. Review of Final Determinations of the Social Security Administration

Under Rule 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes 'that no material issue of fact remains to be resolved and that [he] is entitled to judgment as a matter of law.'" Guzman v. Astrue, No. 09-CV-3928 (PKC), 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990). "The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). Thus, as long as (1) the ALJ has applied the correct legal standard, and (2) the ALJ's findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

## B. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Social Security Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Social Security Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In Dixon v. Shalala, the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the

7

residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995) (internal citations omitted)

The "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (citation and internal quotation marks omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "show there is other gainful work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## IV.   DISCUSSION

Plaintiff alleges that the ALJ erred in concluding that he was not disabled, and that the ALJ's decision was "erroneous, not supported by substantial evidence on the record and/or

contrary to the law." (Compl. ¶ 9.) The court construes Plaintiff's generalized pro se Complaint to contend that the ALJ misapplied the law and that the ALJ's decision was not substantiated by the evidence when he ruled that (1) Plaintiff's medical impairment did not satisfy the criteria in the "Listing of Impairments" in 20 C.F.R. pt. 404, subpt. P app. 1 ("Appendix 1"), and (2) Plaintiff retained the residual functioning capacity ("RFC") to perform work that existed in significant numbers in the national economy. Plaintiff does not appear to dispute the first two steps, nor the fourth step, of the ALJ's five-step analysis (which were favorable to Plaintiff)—that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of June 1, 2010, through the date of his hearing before the ALJ; that Plaintiff has the severe impairments of asthma, hypertension, and bilateral knee pain; and that Plaintiff is unable to perform any past relevant work. (Rec. at 13-15.)

### A. The ALJ's Step-Three Determination

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1. The court concludes that the ALJ did not commit error.

SSA regulations provide that if the applicant has "an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), [the SSA] will find [the claimant] disabled without considering [his] age, education, and work experience." See 20 C.F.R. § 416.920. Determinations at step three are "'based solely on medical evidence.'" See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)).

The listings for asthma are located in section 3.03 of Appendix 1. A claimant can meet the listing requirement for asthma by satisfying either section 3.03(A) or section 3.03(B). To

meet the requirements for asthma under section 3.03(A), the claimant can be evaluated under the criteria for chronic obstructive pulmonary disease in section 3.02(A). Alternatively, a claimant can meet the asthma listing requirement in section 3.03(B), which requires that a complainant suffer from asthma attacks at least once every two months or at least six times per year. "Attacks of asthma" are defined in section 3.00(C) as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."

First, the Commissioner correctly contends that Plaintiff did not meet the listing requirement under section 3.03(A), which cross-references to section 3.02(A). Table I in section 3.02(A) sets forth impairment by height and one-second forced expiratory volume ("FEV1"), to determine if a claimant meets the listing requirement for chronic pulmonary insufficiency. The consultative examiner listed Plaintiff's height as sixty-nine inches tall. (Rec. at 172.) For a claimant with a height of sixty-nine inches to meet the listing requirement under section 3.02(A), the claimant must have an FEV1 equal to or less than 1.45. In a Physical Residual Functional Capacity Assessment dated July 8, 2010, Plaintiff is listed as having an FEV1 of 2.21. (Rec. at 181.) Thus, medical records support the finding that Plaintiff did not meet the listing requirement under section 3.03(A) for asthma.

Second, the Commissioner correctly contends that Plaintiff does not meet the listing requirement for asthma under section 3.03(B). Under section 3.03(B), a claimant meets the listing requirement by suffering attacks "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." Section 3.03(B) also provides that each in-patient hospitalization for longer than 24 hours for control of asthma

counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. Here, the ALJ based his ruling on Plaintiff's medical history. (See Rec. at 14.) The medical records and the consultative examiner's description of Plaintiff's history of asthma do not indicate that Plaintiff had six qualifying attacks of asthma within a period of twelve consecutive months. (See id. at 14, 135-69, 171-79.) Therefore, the ALJ's determination that Plaintiff's asthma condition does not meet the listing requirement pursuant to section 3.03(B) was supported by medical evidence in the record.

The court notes that in addition to asthma, the ALJ listed Plaintiff's hypertension and bilateral knee pain as severe impairments at step two, but did not expressly determine whether either qualified as a listed impairment. A court may affirm an ALJ's step-three determination even though the ALJ did not give an express rationale where there is sufficient, uncontradicted evidence in the record to provide substantial evidence for the ALJ's conclusion. See Norman v. Astrue, 912 F. Supp. 2d 33, 40-41 (S.D.N.Y. 2012) (citing Berry, 675 F.2d at 468). Here, the court notes that hypertension, on its own, cannot qualify as a listed impairment. See Appendix 1 § 4.00(H)(1) ("Because hypertension (high blood pressure) generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when we consider its effects under the listings."). With respect to Plaintiff's knee pain, although the ALJ did not expressly consider whether Plaintiff's impairment qualifies as a listed impairment, the court concludes, based on its review of the record, that it does not. See, e.g., Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) ("While the ALJ might have been more specific in detailing the reasons for concluding that [plaintiff's] condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from

the plaintiff, permits us to affirm this part of the challenged judgment."); Berry, 675 F.2d at 468 ("Nonetheless, the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."); Sava v. Astrue, No. 06-CV-3386 (KMK) (GAY), 2010 WL 3219311, at *4 (S.D.N.Y. Aug. 12, 2010) (determining, based on review of the record, that plaintiff did not meet listed impairment, and therefore ALJ did not err in step-three determination).

In order for a claimant's "major dysfunction of a joint" to qualify as a listed impairment under section 1.02(A), there must be "gross anatomical deformity," "chronic joint pain," and, most significantly—for a weight-bearing joint such as the knee—the "inability to ambulate effectively," defined in section 1.00(B)(2)(b) as an "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Here, the record reflects that Plaintiff's knee issues cannot possibly qualify as a listed impairment. For example, Plaintiff himself testified during the hearing that he can walk on his own, and that he only has leg pain when an asthma attack occurs. (Rec. at 32, 37.) Dr. Eyassu also remarked that although Plaintiff could only perform 50% of a full squat, Plaintiff's gait and stance were normal, and Plaintiff had a "full range of motion of hips, knees and ankles bilaterally." (Id. at 172-73.)

Finally, although the ALJ did not expressly analyze whether Plaintiff's hypertension and bilateral knee pain qualified as listed impairments, the court again notes, as discussed above, that the ALJ did perform a thorough analysis with respect to Plaintiff's asthma, the main impairment reflected in Plaintiff's testimony and medical records. Compare, e.g., Ramos v. Colvin, No. 13-CV-6503 (MWP), 2015 WL 925965, at *12 (W.D.N.Y. Mar. 4, 2015) (remanding case where

"the ALJ's determination does not reveal whether he considered the Listing at all, much less which of the Listing criteria he concluded were lacking" (emphasis added)); Norman, 912 F. Supp. 2d at 77-78 & n.70 (remanding case where the ALJ failed to provide any discussion whatsoever about particular listed impairments related to claimant's symptoms).

## B. The ALJ's Step-Five Determination

The ALJ subsequently found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some additional limitations. (See Rec. at 14.) In reaching this conclusion, the ALJ considered the entire record, including Plaintiff's description of his symptoms and the extent to which those symptoms could be reasonably accepted as consistent with the objective medical evidence. (Id. at 14-15.) The ALJ also considered the opinion evidence of the consultative examiner, Dr. Eyassu. (Id. at 15.)

At step five, if a claimant cannot perform his past work, the ALJ determines whether there is other work that the claimant could perform. See 20 C.F.R. § 404.1520(a)(4)(v). In making such a determination, the ALJ must consider four factors: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" Lupo v. Comm'r of Soc. Sec., 07-CV-4660 (ENV), 2011 WL 1316105, at *2 (E.D.N.Y. Apr. 4, 2011) (quoting Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam)). An ALJ typically analyzes these factors by utilizing the applicable "Medical-Vocational Guidelines," see 20 C.F.R. pt. 404, subpt. P app. 2 ("Appendix 2"), although sole reliance on Appendix 2 may be inappropriate where the claimant's exertional impairments (which are administratively incorporated into Appendix 2) are compounded by

nonexertional impairments.[1] See Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012) (summary order); see also, e.g., Thomas v. Astrue, No. 11-CV-589 (GTS) (ESH), 2012 WL 5364275, at *3-5, *6-7 (N.D.N.Y. Sept. 19, 2012) (report and recommendation) (discussing framework for analyzing claim involving both exertional and nonexertional impairments), adopted, 2012 WL 5364272 (N.D.N.Y. Oct. 30, 2012). The analysis requires a "case-by-case" approach, and "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on [Appendix 2]." Bapp v. Bowen, 802 F.2d 601, 603, 606 (2d Cir. 1986). The court in Bapp clarified:

> A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

Id. at 603. "A claimant's work capacity is 'significantly diminished' if there is an additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Roma, 468 F. App'x at 21 (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).

Here, after consulting Appendix 2, which provides that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (see Rec. at 16), the ALJ determined that Plaintiff's

---

[1] An exertional limitation occurs "[w]hen the limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms, such as pain, affect only [his] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). A nonexertional limitation is one that is related to a claimant's ability to meet the demands of a job other than the strength demands. See id. § 404.1569a(c)(1) (defining nonexertional limitation and including difficulty tolerating dust or fumes as an example); see generally Thomas v. Astrue, No. 11-CV-589 (GTS) (ESH), 2012 WL 5364275, at *4, *7 (N.D.N.Y. Sept. 19, 2012) (report and recommendation) (explaining that where both exertional and nonexertional limitations are noted, an ALJ can still use Appendix 2 as a guiding "framework" for determining whether the claimant is disabled (citing Appendix 2 § 200.00(e)(2))), adopted, 2012 WL 5364272 (N.D.N.Y. Oct. 30, 2012).

14

additional, nonexertional limitations have "little or no effect on the occupational base of unskilled light work" and therefore, that a finding of "not disabled" was appropriate (id.).

The ALJ's conclusion is supported by materials in the record; for example, a vocational analyst for a New York State agency concluded that Plaintiff can perform light work, his environmental limitations notwithstanding. (Id. at 15 (citing vocational analyst's conclusion); see also id. at 183-84 (noting that due to history of asthma, Plaintiff must "avoid concentrated exposure" to "fumes, odors, dusts, gasses, poor ventilation, etc.," but nonetheless concluding that Plaintiff has RFC to perform "light work").) And Plaintiff's own testimony confirms that he is able to engage in most day-to-day activities, his asthma notwithstanding. Thus, the ALJ properly applied Appendix 2, taking into account Plaintiff's nonexertional limitations. The ALJ did not use Appendix 2 as a presumptive tool for determining whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, but rather, used it as a framework, and considered Plaintiff's nonexertional limitations in concluding that there are such jobs.[2] While the ALJ's analysis could have been more detailed on this point, the court agrees that Plaintiff's nonexertional limitation "has little or no effect on the occupational base of unskilled work." (Id. at 16.) See also Bapp, 802 F.2d at 603 ("[M]ere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."); cf. SSR 85-15, 1985 WL 56857, at *8 (1985) (The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments)

---

[2] See also Appendix 2 § 200.00(e)(2) ("[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. . . . [F]ull consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.").

15

(explaining, in context of solely nonexertional impairment, that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.").

## V. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment for the Commissioner and to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      May 26, 2015

NICHOLAS G. GARAUFIS
United States District Judge